UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

FISCHER TUCKER,

        Petitioner,                              Case No. 1:22-cv-642

v.                                                Honorable Paul L. Maloney

MICHAEL BURGESS,

        Respondent.
_____/

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (discussing that a district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

I. **Factual Allegations**

Petitioner Fischer Tucker is incarcerated with the Michigan Department of Corrections at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. On August 21, 2018, Petitioner pleaded guilty in the Chippewa County Circuit Court to being a prisoner in possession of a weapon, in violation of Mich. Comp. Laws § 800.2384. The court sentenced Petitioner as a third habitual offender, Mich. Comp. Laws § 769.11, to a prison term of 4 years, 9 months to 10 years. By statutory mandate, that sentence is to be served consecutive to the sentences he was serving when he committed the offense. Petitioner has not yet completed the minimum terms of his prior sentences; so he has not yet begun to serve the sentence for possession of a weapon.

Petitioner attaches to his brief a Presentence Investigation Report that includes the following description of the underlying facts:

> On 2/20/18 at approximately 6:56 P.M., Officer D. Wilson, of the Chippewa Correctional Facility observed the defendant, Fis[c]her Tucker, quickly approach #439259 Drain from behind as the two prisoners exited A-Unit. The defendant began striking the victim repeatedly with a weapon consisting of a belt with a padlock attached to the end. Officer Wilson gave loud verbal commands to stop fighting. Officer Rogers, called a fight over his [institutional] radio. Before staff could intervene, the victim was struck multiple times resulting in serious injuries consisting of numerous contusions and severe lacerations about his face causing severe swelling to both sides of his face and the top of his head.

(ECF No. 2-1, PageID.64–65.) The Michigan Court of Appeals reports that "[d]uring the guilty-plea hearing, defendant testified that he possessed or controlled an 'implement' that could have been used to injure a prisoner or another person on February 20, 2018, and he pleaded guilty to being a prisoner in possession of a weapon." *People v. Tucker*, No. 349643, slip op. at 1 (Mich. Ct. App. Mar. 18, 2021) (ECF No. 2-1, PageID.69).

After the court sentenced Petitioner, he filed a motion to correct an invalid sentence. Petitioner argued for a 15-point reduction in the scoring of Offense Variable 1, Mich. Comp. Laws § 777.31, regarding the weapon used. The trial court agreed.

Petitioner also challenged the trial court's assessment of 25 points for Offense Variable 19. That variable calls for the assessment of 25 points if the offense threatened the security of a penal institution. Mich. Comp. Laws § 777.49. Petitioner argued that "a fight between two inmates in and of itself was not sufficiently related to the security of a penal institution to warrant the scoring of 25 points." (ECF No. 2-1, PageID.36.) The trial court stood by its initial assessment.

The net impact of the trial court's acceptance of one of Petitioner's challenges and rejection of the other left Petitioner in the same cell of the relevant sentencing grid, so the trial court maintained the same sentence. If the Court had adopted both of Petitioner's arguments, however, the reduced offense variable total would have moved him to another cell. The floor would have fallen from 24 months to 22 months; but the ceiling would have remained at 57 months.

Petitioner sought leave to appeal his sentence. He challenged the trial court's determination of Offense Variable 9, Mich. Comp. Laws § 777.39, regarding the number of victims who were placed in danger of physical injury or death. The trial court determined that there were 10 or more victims put at risk and, therefore, assessed 25 points for the offense variable. Petitioner argued that only 5 persons were put at risk—the two prisoners involved in the fight and the prison guards who intervened. The court of appeals agreed. The court vacated Petitioner's sentence and remanded to the trial court for resentencing.

The change to the offense variable assessment for Offense Variable 9 moved Petitioner up one cell in the sentencing grid—reducing the minimum sentence range floor from 24 to 22 months but leaving the ceiling at 57 months. Petitioner also argued again for removal of the 25-point

3

assessment for Offense Variable 19. The court held firm on the scoring of Offense Variable 19 and resentenced Petitioner to 57 months to 10 years' imprisonment.

If the court had adopted Petitioner's argument, it would have moved Petitioner up one more cell in the sentencing grid. The floor would have dropped from 22 months to 19 months but, once again, the ceiling would have remained at 57 months.

Petitioner sought leave to appeal his new sentence, challenging the trial court's assessment of 25 points for Offense Variable 19. Petitioner argued that the trial court scored the variable based on facts other than post-judgment conduct. Petitioner claimed that the variable could only be scored based on post-offense or post-judgment conduct and that the trial court's assessment was based on facts that were not related to post-offense or post-judgment conduct. (ECF No. 2-1, PageID.74, 84–85.) Petitioner argued further that the offense did not involve any threat to the security of the penal institution other than the threat to the victim which, under Michigan law, would not suffice to support the assessment. (ECF No. 2-1, PageID.85–86.)

By order entered August 17, 2021, the Michigan Court of Appeals denied leave to appeal for lack of merit in the grounds presented. (ECF No. 2-1, PageID.62.) The Michigan Supreme Court likewise denied leave to appeal by order entered January 31, 2022. (*Id*., PageID.61.)

On July 14, 2022, Petitioner timely filed his habeas corpus petition raising two grounds for relief, as follows:

I. Resentencing is warranted because 10 or more persons were not placed in danger of physical injury or death as required by the scoring of OV 9/25 points, conduct did not threaten security, (25 points/OV19).

II. Petitioner's sentence regardless of the scoring of OV9/OV19, was based on inaccurate information.

(Pet., ECF No. 1, PageID.7, 9.)

## II. AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record

6

that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

**III.    Discussion**

The focus of Petitioner's first habeas claim is that the trial court erred when scoring the Offense Variables 9 and 19 under the Michigan sentencing guidelines. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Note to Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373–74 (1982) (federal courts normally do not review a sentence for a term of years

that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301–02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

Petitioner's claim that the state court erred initially when scoring Offense Variable 9 is plainly correct—because the Michigan Court of Appeals validated that claim. As the Supreme Court explained in *Estelle*, "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." 502 U.S. at 67–68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). The court of appeals' conclusion that the Offense Variable 9 score should be 10, not 25 is, therefore, axiomatically correct.

But that error has been corrected. The trial court resentenced Petitioner with an assessed Offense Variable 9 score of 10 points. Petitioner has received all of the relief to which he is entitled.

This Court is also bound by the state court of appeals' determination that Petitioner's challenge to the assessment of Offense Variable 19 lacked merit. The conclusion that the sentencing court properly scored that variable is also axiomatically correct. Petitioner's challenge to the state-law issue regarding the scoring of that variable is simply not cognizable.

Petitioner's second ground at least approaches the boundaries of habeas cognizability. Petitioner complains that his sentence is based on "inaccurate" facts. A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980); *see also Tucker*, 404 U.S. at 447; *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the

information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Stevens*, 851 F.2d 140, 143 (6th Cir. 1988); *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Petitioner does not identify any facts relied upon by the court at sentencing that were either materially false or based on false information. Instead, Petitioner uses the term "inaccurate." (ECF No. 1, PageID.9.) But Petitioner does not identify any facts found by the court at sentencing that were "inaccurate" either. Instead, he seems to challenge the court's conclusion that the facts were sufficient to establish that the security of the prison was threatened. Although Petitioner characterizes the sentencing court's determination that Petitioner's conduct posed a threat to the prison's security as a factual finding, in this context it is more in the nature of a legal conclusion. In that regard, Petitioner's argument is just a rehash of his first habeas ground and it is not cognizable on habeas review.

It is also possible that Petitioner intends to argue that the facts found were not sufficient to support the sentencing court's determination regarding the threat to prison security. The sufficiency of the evidence to support a conviction raises Fourteenth Amendment due process concerns. But whether or not the facts were sufficient to support a 25-point score at sentencing is purely a matter of state law.

The Sixth Circuit described the scope of constitutional protection at sentencing with regard to the burden of proof as follows:

> But the Due Process Clause does not offer convicted defendants at sentencing the same "constitutional protections afforded defendants at a criminal

9

> trial." *United States v. Silverman*, 976 F.2d 1502, 1511 (6th Cir. 1992) (en banc). "[B]oth before and since the American colonies became a nation," *Williams v. New York* explains, "courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." 337 U.S. 241, 246 (1949). That tradition has become more settled over time, because "possession of the fullest information possible concerning the defendant's life and characteristics" is "[h]ighly relevant—if not essential—to [the judge's] selection of an appropriate sentence." *Id.* at 247. An imperative of "evidentiary inclusiveness"—"a frame of reference as likely to facilitate leniency as to impede it," *United States v. Graham–Wright*, 715 F.3d 598, 601 (6th Cir.2013)—explains why the Evidence Rules, the Confrontation Clause, and the beyond-a-reasonable-doubt standard of proof do not apply at sentencing. *See United States v. O'Brien*, 560 U.S. 218, 224 (2010) (beyond a reasonable doubt); *Williams v. New York*, 337 U.S. at 246–47, 252 (Evidence Rules); *United States v. Katzopoulos*, 437 F.3d 569, 576 (6th Cir. 2006) (Confrontation Clause); *see generally United States v. Tucker*, 404 U.S. 443, 446 (1972).

*United States v. Alsante*, 812 F.3d 544, 547 (6th Cir. 2016). In *McMillan v. Pennsylvania*, 477 U.S. 79 (1986),[1] the Supreme Court acknowledged that "sentencing courts have always operated without constitutionally imposed burdens of proof . . . ." *Id.* at 92 n.8.[2]

---

[1] *McMillan* was overruled in *Alleyne v. United States*, 570 U.S. 99 (2013). *See United States v. Haymond*, 139 S. Ct. 2369, 2378 (2019) ("Finding no basis in the original understanding of the Fifth and Sixth Amendments for *McMillan* and *Harris* [*v. United States*, 536 U.S. 545 (2002)], the [*Alleyne*] Court expressly overruled those decisions . . . ."). The *McMillan* holding that was overruled, however, was the principle that factors implicating mandatory minimum sentences did not require proof beyond a reasonable doubt. The underlying premise from *McMillan* quoted above—that there is no constitutionally required standard of proof to support discretionary sentencing decisions—survived *Alleyne* and, indeed, was effectively highlighted by *Alleyne* when the *Alleyne* Court distinguished mandatory from discretionary sentencing decisions. None of the cases in the line of authority that culminated in *Alleyne*— *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Ring v. Arizona*, 53 U.S. 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005),—suggest that the constitutionally required burden of proof that applies to facts found in support of mandatory maximum or minimum sentences applies to discretionary sentences.

[2] Even the term "burden of proof" can be misleading. As the Supreme Court noted in *Mullaney v. Wilbur*, 421 U.S. 684 (1975), "[c]ontemporary writers divide the general notion of 'burden of proof' into a burden of producing some probative evidence on a particular issue and a burden of persuading the factfinder with respect to that issue by a standard such as proof beyond a reasonable doubt or by a fair preponderance of the evidence." *Id.* at 695 n.20. Generally, the Constitution places the burden of production and persuasion on the prosecutor to prove the elements of a charged offense and the standard of persuasion is "beyond a reasonable doubt." There are times,

The State of Michigan requires that factual determinations used for sentencing be supported by a preponderance of the evidence. *People v. Hardy*, 835 N.W.2d 340, 344 (Mich. 2013). There is clearly established federal law that supports the conclusion that proof at sentencing by a preponderance of the evidence would satisfy due process. *See, e.g.*, *United States v. Watts*, 519 U.S. 148, 156 (1997). *Watts* notes that proof by a preponderance of the evidence would satisfy due process, but the Court did not say that due process requires it. Rather, in *Watts*, it was the federal sentencing guidelines that required proof by a preponderance of the evidence and the Court only considered whether a higher standard—such as clear and convincing evidence—was constitutionally required. Thus, *Watts* was not an attempt to establish the bottom limit of constitutional propriety; it merely held that a preponderance of the evidence standard of persuasion was constitutionally acceptable, even for acquitted conduct.[3]

Even though the State of Michigan requires that facts supporting a sentence be proven by a preponderance of the evidence, that requirement is a matter of state law, not the Constitution. Therefore, a sufficiency-of-the-evidence claim for sentencing, at least for a non-capital offense, is not cognizable on habeas review.

But even if the state court got it wrong, even if the guidelines were improperly scored as Petitioner argues, he would not be entitled to habeas relief because the error was harmless. For reasons of finality, comity, and federalism, habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht v.*

---

however, where the Constitution permits the placement of the burden of production and persuasion on the defendant, for example, with regard to affirmative defenses. It might be less confusing to refer to the required persuasive impact of the evidence as the standard of persuasion rather than the burden of proof.

[3] As a practical matter, the preponderance of the evidence standard might be the lowest acceptable standard of persuasion, not because of the Due Process Clause, but because anything lower than "more likely than not" is not really persuasive at all.

*Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)). Under this test, relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'" *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). There must be more than a "reasonable possibility" that the error was harmful. *Brecht*, 507 U.S. at 637 (internal quotation marks omitted). The *Brecht* standard reflects the view that a "State is not to be put to th[e] arduous task [of retrying a defendant] based on mere speculation that the defendant was prejudiced by trial error; the court must find that the defendant was actually prejudiced by the error." *Calderon v. Coleman*, 525 U.S. 141, 146 (1998) (per curiam).

The sentencing judge here had three opportunities to exercise his discretion and select a minimum sentence from a range. All three times, without regard to a change in the score or the floor of the range, the judge selected the highest end of the range—57 months. The prospect of moving the floor of that range a couple of months lower presents, at best, a possibility that the judge's fourth exercise of discretion on the same facts would be different. Under *Brecht*, that is not enough. Thus, even if Petitioner's claims of error were valid, he has failed to show that he suffered prejudice as a result.

For all of these reasons, Petitioner has failed to show that the state court's rejection of his claims is contrary to, or an unreasonable application of clearly established federal law, thus he is not entitled to habeas relief.

## IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated:  August 9, 2022                             /s/ Paul L. Maloney
                                                                  Paul L. Maloney
                                                                  United States District Judge